John E. ROMEO and Beverly C. Romeo,
Plaintiffs-Appellants,

v.

UNITED STATES of America et al.,
Defendants-Appellees.

No. 71–3401.

United States Court of Appeals,
Fifth Circuit.

July 7, 1972.

Gerald Blessey, Peter Halat, Biloxi, Miss., for plaintiffs-appellants.

Joseph E. Brown, Jr., Asst. U. S. Atty., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for defendants-appellees.

Before RIVES, COLEMAN and DYER, Circuit Judges.

RIVES, Circuit Judge:

Following destruction visited upon his place of business by Hurricane Camille, Romeo made application to the Small Business Administration ("SBA") for a disaster loan. That loan in the amount of $41,500 was approved on November 4, 1969. In its letter to Romeo, the SBA stated: "If you are in immediate need of funds, we suggest you take this letter to your Bank of account who may be able to advance funds to let you get your rehabilitation started." Following the SBA's suggestion, Romeo sought and received a $2,500 advance from a local bank. Then, on April 2, 1970, the SBA notified Romeo that the loan approval had been rescinded. In a letter dated October 9, 1970, the SBA expounded upon its reasons for withdrawal of the loan:

> "We have reviewed our files regarding your application and they indicate that you have been interviewed by Federal agents several times in recent years regarding possible illegal activities in connection with some of your business enterprises. Also, in recent years you obtained and used a Federal wagering tax stamp."

(App. at 37.) [1]

Romeo filed this suit, against the United States, the SBA, and its Administrator, in federal district court, asserting jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 634(b)(1).[2] Romeo prayed for monetary damages in excess of $10,000 and for specific performance of the November 1969 loan approval.

The district court dismissed Romeo's suit with prejudice. We affirm.

Romeo's cause of action is two-pronged. Initially he seeks recovery from the United States, the SBA, and its Administrator, Hillory Sandoval, in his official capacity. Alternatively, Romeo lodges a claim against the Administrator in his individual and personal capacity.

(1) At trial, and on this appeal, defendants contended that the doctrine of sovereign immunity bars Romeo's claim against the United States, the SBA, and Hillory Sandoval in his official capacity. That is, being an integral part of the United States Government, the SBA and its Administrator are cloaked with full immunity. As a starting proposition, defendants' contention is sound. United States v. Mel's Lockers, Inc., 10 Cir. 1965, 346 F.2d 168; *see also* Larson v. Domestic and Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628; Simpkins v. Davidson, S.D.N.Y.1969, 302 F.Supp. 456. Equally valid is the notion that the sovereign can, by an Act of Congress, waive its immunity. *E. g.,* Dalehite v. United States, 1954, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 461. We hold that Congress has, to some extent, waived immunity for the SBA by enacting 15 U.S.C. § 634(b)(1), quoted in footnote 2, *supra.* To give that section any substantial meaning, we conclude that it was intended to waive sovereign immu-

---

1. Romeo originally sought funding to reconstruct the Mermaid Club. The SBA discovered that the Mermaid Club had been operated, at least in part, as a gambling establishment. Romeo sought to explain that his initial application was in error, that he was actually seeking funds to rebuild the Can Can Club, in which no gambling would be allowed.

2. 15 U.S.C. § 634(b) provides:
   "(b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—
   "(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property * * *."

nity with respect to the functions, powers, and duties of the Administrator.[3] However, the waiver is a limited one, for "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property." *Id.* Clearly, then, Romeo's suit is barred insofar as he seeks injunctive relief in the nature of specific performance.[4] But the Congress has consented to his claim for monetary damages.[5]

On the merits, Romeo's claim for money damages fails. Paragraph 14 of the SBA's loan authorization, issued to Romeo on November 4, 1969, provides:

"Prior to the first disbursement, and to each subsequent disbursement on account of the Loan, Disaster Office Branch Manager shall be in receipt of evidence, satisfactory to him in his sole discretion, that there has been no adverse change since the date of the Application, or since any of the preceding disbursement, or that since the date of such Application or of any such disbursement, no facts or circumstances have become known or have arisen with respect to the organization, operations, business prospects, fixed or other property, personnel, or in the financial or any other condition of Borrower, which would warrant withholding or not making any such disbursement or any further disbursement."

(App. at 20.) Subsequent to its approval of Romeo's application, the SBA became aware of his involvement with gambling activities. The district court found that it was within Sandoval's discretion, pursuant to SBA policy, to deny a loan to an individual involved with gambling. Romeo does not deny that he had a federal wagering tax stamp or that he had been investigated for illegal gambling enterprises. He does contend that his gambling activities were limited to the Mermaid Club, that he intended to utilize any SBA funds to reconstruct the Can Can Club, and that no gambling was to be carried on in that establishment. Nonetheless, we are persuaded that the district court was on sound ground in approving the Administrator's discretionary act. Sandoval could legitimately withhold funds from one such as Romeo, who was undoubtedly to some extent involved in gambling.[6]

(2) Having concluded that Sandoval acted within the scope of his legitimate authority in withholding the loan, we also affirm the district court's judgment denying any recovery against the Administrator in his personal capacity. As the district judge noted:

" '* * * federal officials cannot be held personally liable in damages for an act committed within the general scope of their official authority and in performance of their official duties.' [Quoting from Norton v. McShane, 5 Cir. 1964, 332 F.2d 855.] The principal reason as stated in Barr v. Mateo, 360 U.S. 564, [79 S.Ct. 1335, 3 L.Ed. 2d 1434] is that government officials must be free to exercise their duties without fear of damage suits in respect to acts done in the course of those duties. Even in a case where plaintiffs charged federal officials with the unlawful, willful and mali-

---

3. The Administrator is vested with complete control and supervision over the affairs of the SBA: "The management of the Administration shall be vested in an Administrator * * *." 15 U.S.C. § 633(b).

4. Mel's Lockers, Inc., *supra; see* Allen M. Campbell, Inc. v. Lloyd Wood Construction Co., 5 Cir. 1971, 446 F.2d 261.

5. SCLC v. Connolly, E.D.Mich.1971, 331 F.Supp. 940; Pottharst v. SBA; E.D.La. 1971, 329 F.Supp. 1142; Simpkins v.

Davidson, S.D.N.Y.1969, 302 F.Supp. 456. *See also,* Allen M. Campbell, Inc. v. Lloyd Wood Construction Co., N.D.Ala. 1970, 318 F.Supp. 1167, rev'd on other grounds, 446 F.2d 261.

6. Moreover, as noted in footnote 1, *supra,* Romeo's loan application sought funding for the Mermaid Club. Apparently, he did not seek to inform the SBA that he wanted the funds for the Can Can Club until after he became aware of the SBA's interest in his alleged gambling activities.

cious denial of fundamental constitutional rights, the Fifth Circuit Court of Appeals denied liability. See Norton v. McShane (supra). In *Norton,* the court said: 'The federal courts have applied the doctrine of official immunity to suits against numerous officials for many different torts. By the great weight of authority, law enforcement officers are immune from civil suits based on allegedly malicious acts.' * * * [B]owing to the * * * rule stated above, the Court finds that the Administrator's decision * * * was within at least 'the outer perimeter' of his official duties and he is therefore immune from liability."

(App. at 49.) We are in accord with that view and can perceive no reason, under the circumstances of this case, for departing from the general rule.

Affirmed.