**W.W. TAYLOR, Plaintiff-Appellant,**

v.

**ADMINISTRATOR OF the SMALL BUSINESS ADMINISTRATION, Defendant-Appellee.**

**No. 82-1135.**

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1983.

Leonard, Koehn, Rose & Hurt, Jeffrey W. Hurt, Stephen W. Collins, Dallas, Tex., for plaintiff-appellant.

Larry R. Patton, Asst. U.S. Atty., Dallas, Tex., Frederick Geilfuss, Atty., Appellate Section Civ. Div., Michael Kimmel, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before BROWN, REAVLEY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Plaintiff-appellant, W.W. Taylor, filed a complaint in federal district court against the Administrator of the Small Business Administration, alleging causes of action in both tort and breach of contract arising out of the Administrator's failure to issue lease guarantees of which Taylor was to be the third-party beneficiary. Taylor based jurisdiction for his suit upon 15 U.S.C. § 634(b)(1) (1982), which authorizes the Administrator to "sue and be sued" in the performance of, and with respect to, his functions, powers, and duties. The district court, holding that section 634(b)(1) is a waiver as to the Small Business Administration only and not as to the United States generally, found that there was no fund separate and apart from the Treasury from which a judgment against the Administra-

tor could be paid and that, therefore, Taylor's action, in reality, was one against the United States. The district court thus dismissed the complaint for lack of subject matter jurisdiction. On appeal, we affirm the district court's dismissal of Taylor's tort claims, as these claims are exclusively cognizable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–80 (1976). However, as to the district court's dismissal of Taylor's breach of contract claims, we reverse and remand.

I.

The Small Business Administration ("SBA") has authority to "guarantee the payment of rentals under leases of commercial and industrial property entered into by small business concerns to enable concerns to obtain such leases." 15 U.S.C. § 692(a) (1982). Sometime prior to March 1972, Trans World Enterprises, Inc. ("TWE"), a small business concern, applied to the SBA for lease guarantee insurance to cover two leases it planned to enter into with W.W. Taylor.[1] TWE's first application, for $842,400, was approved by the SBA, subject to several conditions, on March 16, 1972. TWE's second application, for $677,700, was approved, also subject to several conditions, on July 6, 1972. The third-party beneficiary of this insurance was to be the landlord, Taylor. In consideration for the SBA's promise to guarantee the leases, Taylor was required to make cash payments to the Administrator in the form of commitment fees. Pursuant to the Administrator's instruction, Taylor subsequently paid additional cash consideration to extend the promise to insure. However, on or about March 17, 1975, the Administrator notified Taylor by letter that it would not issue the lease guarantee policies, whereupon Taylor brought the present action.

Taylor filed three nearly identical lawsuits—one in state court, one in federal district court, and one in the Court of

---

1. W.W. Taylor is the assignee and president of the original landlord, Western Southern Development Co., Inc.

Claims.[2] The Administrator filed a petition for removal in the state action on April 20, 1981. Since both the state court action and the federal district court action involved identical issues of law and fact, the district court, on its own motion, consolidated the removed action with the action originally filed in federal district court.

Taylor alleges in his complaint that, in reliance upon the Administrator's promise to insure, he acquired land and built buildings at a cost in excess of one million dollars "to cause facilities to be made available to the proposed insured." He further alleges that he had complied with all of the conditions set forth in the Administrator's approval of TWE's applications,[3] but that, nevertheless, the Administrator "did, with wilful intent to cause harm to [Taylor], notify [Taylor], by letter, that [the Administrator] could not honor [his] promise to insure." Record at 5, 6. Taylor asserts causes of action under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Texas Bus. & Com.Code Ann. § 17.41 *et seq.;* unspecified provisions of the Texas Insurance Code; the Federal Trade Commission Act; and breach of contract.[4] Taylor seeks to recover in damages the $842,400 and the $677,700 which the Administrator had agreed to guarantee, treble damages pursuant to section 17.50 of the DTPA, $256,910 in attorneys' fees pursuant to section 17.50 of the DTPA, and an unspecified amount in punitive damages. Taylor asserts jurisdiction solely under 15 U.S.C. § 634(b)(1) (1982).[5]

Taylor filed a motion to remand or, alternatively, a motion for summary judgment; the Administrator filed a motion to dismiss the complaint. The district court denied Taylor's motion to remand and granted the Administrator's motion to dismiss.

In dismissing Taylor's complaint, the district court relied, by analogy, upon several cases dealing with the "sue and be sued" clause in the Federal Housing Act, 12 U.S.C. § 1702 (1982),[6] authorizing suits by and against the Secretary of Housing and Urban Development ("HUD"). *Lomas & Nettleton Co. v. Pierce,* 636 F.2d 971 (5th Cir.1981); *Industrial Indemnity, Inc. v.*

2. Apparently, no action has been taken in the case pending before the Court of Claims, *Taylor v. United States,* Ct.Cl. No. 171–81C (filed March 13, 1981). Appellee's Brief at 3.

3. The Administrator claims that Taylor's pleadings are defective on this point. Among the conditions for approval of the lease guarantees were that there be a final approved lease, that the tenant take occupancy, and that the tenant have sufficient capital. The Administrator notes that Taylor's pleadings allege that *"Plaintiff* had complied with all the requirements of the Commitment," Record at 3, and that there are no allegations concerning compliance by the tenant. The Administrator reads the complaint too restrictively. Taylor has filed *pro se* and reading his *pro se* complaint liberally, as we must, *Slavin v. Curry,* 574 F.2d 1256 (5th Cir.1978), we are of the view that Taylor's allegations sufficiently allege that the conditions stated in the commitment letter were complied with. Fairly read, Taylor's allegation can be interpreted to mean that all the conditions in the commitment letter had been met or, at least, that he had seen to it that all of the conditions were met. Even if we were to accept the Administrator's view of the pleadings, Taylor should be given the opportunity to amend his pleadings to correct any deficiencies.

4. Taylor's complaint does not expressly state that it alleges a cause of action for breach of contract. However, we must read *pro se* complaints liberally, *see supra* note 3. Both Counts I and II sound in contract; both allege that promises were made and consideration given. Moreover, the complaint seeks as damages the face value of the contracts. The district court recognized those portions of the complaint as sounding in breach of contract; so do we.

5. Section 634(b)(1) provides:

(b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—

(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property.

6. Section 1702 provides in pertinent part: "The Secretary shall, in carrying out the provisions of this ... chapter, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

*Landrieu,* 615 F.2d 644 (5th Cir.1980); *Marcus Garvey Square v. Winston Burnett Construction Co.,* 595 F.2d 1126 (9th Cir.1979); *DSI Corp. v. Secretary of Housing and Urban Development,* 594 F.2d 177 (9th Cir. 1979). These cases hold that section 1702 waives immunity as to HUD only and not as to the United States generally. The key to whether a suit is against HUD or the United States is the location of the fund from which the judgment is recoverable. If the judgment is recoverable from funds in possession and control of the Secretary that are severed from possession and control of the Treasury, the suit is against the Secretary and thus, within the scope of section 1702. However, if the judgment must be paid from the Treasury, it is a suit against the United States, for which the plaintiff must have a waiver of sovereign immunity independent of section 1702.[7]

Applying the reasoning of these cases to the SBA "sue and be sued" clause, section 634(b)(1), the district court found:

There is no fund separate and apart from the Treasury from which a judgment against the Administrator could be paid. Taylor's claims evolved from lease guarantees allegedly made by the Administrator back in 1972. 15 U.S.C. § 694, which created a revolving fund for commercial or lease guarantees made by the Administrator, specifically provides that a separate fund for guarantees is created "within the Treasury." There have been no appropriations for this fund since 1976. 13 C.F.R. § 106.01 (1981). Therefore, even assuming that the revolving fund was separate and apart from Treasury control, there is now no separate fund in existence from which a judgment might be satisfied. Since any potential recovery must come from the United States Treasury, this action is actually against the United States.

As stated above, Taylor based jurisdiction for a suit against the Administrator on the "sue or be sued" clause in 15 U.S.C. § 634(b). To be within the scope of this "sue or be sued" clause, the suit must be against the Administrator, as opposed to a suit against the United States. Section 634 is a waiver of immunity of the SBA only and is neither a grant of jurisdiction nor a waiver of the sovereign immunity of the United States generally. Since the Court has determined that the action *sub judice* is one against the United States, Taylor must have an independent basis for jurisdiction as well as a waiver of sovereign immunity.

Record at 54–55 (citations and footnote omitted).

The district court went on to find that Taylor's claims which sounded in tort were cognizable only under the Federal Tort

---

7. At bottom, these cases rely upon the Supreme Court's decision in *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). In *Burr,* a Michigan state court served the Federal Housing Administration ("FHA") with a writ of garnishment. The FHA asserted that, as an agency of the United States, it was not subject to garnishment proceedings. Judgment was entered against the FHA and the Supreme Court of Michigan affirmed. The Supreme Court of the United States began by noting that the FHA had a "sue and be sued" provision (the predecessor to section 1702). Thus, since consent to sue and be sued had been given by Congress, the question the Court addressed was whether garnishment was within the scope of that authorization. While the Court found garnishment generally to be allowable, the Court stated:

That does not, of course, mean that any funds or property of the United States can be held responsible for this judgment.... Con-

gress has specifically directed that all such claims against the Federal Housing Administration of the type here involved "shall be paid out of funds made available by this Act".... Hence those funds, and only those, are subject to execution. The result is that only those funds which have been paid over to the Federal Housing Administration ... and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution.... To conclude otherwise would be to allow proceedings against the United States where it had not waived its immunity.

309 U.S. at 250–51, 60 S.Ct. at 493. Courts have subsequently interpreted the Court's holding in *Burr* to require that to fall within the scope of the HUD "sue and be sued" clause, there must be an identifiable fund in the possession and control of the Secretary, separate and apart from the Treasury, from which a judgment can be paid.

Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671–80 (1976), which serves as a limited waiver of sovereign immunity and a grant of jurisdiction to the district courts. The district court found, however, that even if Taylor had alleged jurisdiction under the FTCA, his action would be barred by his failure to file an administrative claim before filing suit as required by the FTCA, 28 U.S.C. § 2675; moreover, the type of tort of which Taylor complains, e.g., misrepresentation, is specifically excluded from the waiver of sovereign immunity. 28 U.S.C. § 2680(h). Therefore, the district court found that it lacked jurisdiction to consider Taylor's tort claims.

The district court next considered Taylor's contract claims and found that contract claims against the United States are governed by the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491 (1976).

> The Tucker Act includes both a waiver of sovereign immunity and a grant of jurisdiction, but this grant of jurisdiction is conditional. Suits seeking recovery of less than $10,000 may be brought in either the district courts or the Court of Claims. Since Taylor is seeking damages in excess of $1.5 million, the Court of Claims has exclusive jurisdiction over Taylor's contract claims.

Record at 56 (citations omitted). Because the district court found no other waiver of sovereign immunity or jurisdictional basis for either Taylor's tort or contract claims, it determined that it was without jurisdiction to hear Taylor's claims and dismissed the suit.[8] From this judgment, Taylor appeals.

## II.

▬ Taylor alleges that the Administrator's actions in not issuing the lease guarantees after having previously promised to do so constitutes fraud and misrepresentation under the DTPA, the Texas Insurance Code, and the Federal Trade Commission Act. Allegations of fraud and misrepresentation sound in tort. W. Prosser,

*The Law of Torts* § 105, at 683 (4th ed. 1971). Claims for monetary damages against an administrative agency which sound in tort are cognizable exclusively under the FTCA. *Gregory v. Mitchell,* 634 F.2d 199 (5th Cir.1981); *Peak v. Small Business Administration,* 660 F.2d 375 (8th Cir. 1981). This is so despite the statutory authority of the federal agency to "sue and be sued." *See Peak, supra,* at 377. Section 2679(a) of the FTCA provides:

> (a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

28 U.S.C. § 2679(a). In adopting the bill that became the FTCA, both the House and Senate Reports stated:

> This will place torts of "suable" agencies of the United States upon precisely the same footing as torts of "nonsuable" agencies. In both cases, the suits would be against the United States, subject to the limitations and safeguards of the bill; and in both cases the exceptions of the bill would apply either by way to preventing recovery at all or by way of leaving recovery to some other act, as, for example, the suits in Admiralty Act. It is intended that neither corporate status nor "sue and be sued" clause shall, alone, be the basis for suits for money recovery sounding in tort.

Thus, it is clear that the waiver of sovereign immunity and grant of jurisdiction in Section 634(b) of the Small Business Act do not extend to Taylor's tort claims. These claims, if they are to be brought at all, must be brought under the FTCA, subject to all of the limitations and safeguards in that Act. Taylor failed to allege jurisdiction under the FTCA, relying instead solely upon Section 634(b).

---

**8.** While, under 28 U.S.C. § 1406(c) (1976), a case within the exclusive jurisdiction of the Court of Claims may be transferred by the district court to the Court of Claims, the district court found such transfer unnecessary in this case because Taylor had already filed suit in the Court of Claims.

■ However, even if Taylor had alleged jurisdiction under the FTCA, his claims would be barred by his failure to exhaust administrative remedies before filing suit as required by the FTCA. 28 U.S.C. § 2675 (1976). Thus, the district court properly determined that it was without jurisdiction to hear Taylor's tort claims. That portion of the district court's judgment is, accordingly, affirmed.

### III.

■ In addition to his tort claims, Taylor also alleges a cause of action for breach of contract. Because this cause of action sounds in contract and not in tort, it falls without the scope of section 2679(a) of the FTCA and thus within the scope of Section 634(b)(1) of the Small Business Act, unless otherwise excluded. The district court, relying on cases interpreting the HUD "sue and be sued" clause, determined that Taylor's cause of action was excluded from the scope of section 634(b)(1) because there is no fund, separate and apart from the possession and control of the Treasury, from which Taylor's claim could be paid.

In *Romeo v. United States,* 462 F.2d 1036 (5th Cir.1972), this court first interpreted section 634(b)(1). In *Romeo,* a small businessman, Romeo, made application to the SBA for a disaster loan following the destruction of his place of business by Hurricane Camille. The SBA later rescinded the loan approval on the grounds that Romeo had been involved in illegal gambling activities in connection with his business enterprises and had previously obtained and used a federal wagering tax stamp. Romeo filed suit against the United States, the SBA, and the Administrator, asserting jurisdiction under section 634(b)(1). Romeo sought monetary damages in excess of $10,000 and specific performance of the initial loan approval. The district court dismissed Romeo's complaint. On appeal, the defendants argued that Romeo's claims were barred by sovereign immunity. This court, however, held that section 634(b)(1) waived sovereign immunity as to Romeo's monetary damage claims:

To give [section 634(b)(1)] any substantial meaning, we conclude that it was intended to waive sovereign immunity with respect to the functions, powers, and duties of the Administrator. However, the waiver is a limited one, for "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property." Clearly, then, Romeo's suit is barred insofar as he seeks injunctive relief in the nature of specific performance. But the Congress has consented to his claim for monetary damages.

462 F.2d at 1037–38 (citations and footnotes omitted). In holding that Congress had consented to Romeo's monetary damage claims, this court did not differentiate between the defendants; section 634(b)(1) allowed the claim against both the Administrator and against the United States, without inquiry into whether there was an agency fund available from which the claim could be paid.

The Administrator argues, and the district court apparently found, that the subsequent cases of this court interpreting the HUD "sue and be sued" clause have qualified the holding of *Romeo.* Taylor urges us to reject application of the HUD cases to section 634(b)(1) and find that section 634(b)(1) is a broad waiver of sovereign immunity and grant of jurisdiction as to both the Administrator and the United States generally. However, in order to grant Taylor the relief he seeks, we need not address this issue. It appears that the district court was misled concerning the existence of the lease guarantee fund. The district court, at the urging of the Administrator and in reliance on 13 C.F.R. § 106.1 (1981) (which specifies that no appropriation has been made to the lease guarantee fund since 1976), concluded that "there is now no separate fund in existence from which a judgment might be satisfied." The attorneys for the Administrator now tell us in their brief to this court that "[w]e are now informed by the SBA, however, that notwithstanding the lack of any appropriation since 1976, the revolving fund created by 15 U.S.C. § 694 does contain capital con-

sisting of appropriations from earlier years, which may be paid for rentals under existing lease guarantees." Appellee's Brief at 6. Accordingly, the Administrator does not pursue this argument on appeal. Therefore, it is not necessary for us, in this case, to decide whether the SBA "sue and be sued" clause, like the HUD provision, should be limited to cases in which there is an identifiable agency fund from which a judgment can be satisfied.[9] Even assuming, *arguendo,* that the Administrator's position is correct—an issue which we specifically decline to decide—Taylor's suit would fall within the waiver of sovereign immunity and grant of jurisdiction of section 634(b)(1); his was a suit against the Administrator and there was a fund from which his judgment could be paid.

The Administrator argues that the district court's dismissal may nonetheless be affirmed because Taylor's complaint does not fall within section 634(b)(1)'s requirement that the suit be "with respect to the functions, powers, and duties vested in him" by the Small Business Act. The Administrator argues that Congress has only authorized the Administrator to "guarantee the payment of rentals," 15 U.S.C. § 692(a) (1982) (section authorizing Administrator to engage in issuing lease guarantees), and has only appropriated funds for the limited purpose of paying "for [lease] guarantees," 15 U.S.C. § 694. Because the parties never entered into an actual lease guarantee, the Administrator argues, this suit is not with respect to the Administrator's powers and

duties and thus is not within the scope of section 634(b)(1).

We find this argument without merit. First, section 694 authorizes payment of *all* expenses, except administrative expenses, with regard to the lease guarantee program from the revolving fund and not, as the Administrator argues, only payment for lease guarantees actually entered into.[10] Further, acceptance of the Administrator's position would allow the Administrator to avoid suit altogether as long as he breached agreements early enough. Section 634(b)(1) allows suits against the Administrator for performance within the scope of his duties under the Small Business Act. Entering into commitments for lease guarantees is within the scope of his duties under section 692. A suit for breach of this commitment would clearly seem to fall within section 634(b)(1). In another portion of his brief, the Administrator concedes this point: "[A]ny judgment against the Administrator in this suit would be paid from money contained in 'a separate fund for [lease] guarantees' created by 15 U.S.C. 694." Appellee's Brief at 6. The Administrator also conceded this point at oral argument. When questioned on whether the Administrator is amenable to suit for breach of a commitment letter, counsel for the Administrator answered:

> A: If all [the Administrator] has done is sign the commitment letter rather than issue the lease guarantee itself, the plaintiff then, at least, has to allege, in a fair way, that the condi-

---

**9.** While we do not here decide the issue, we note that we would be extremely reluctant to extend the holding of the HUD cases to the SBA. The HUD cases, in holding that the existence or non-existence of an identifiable agency fund goes to the question of whether sovereign immunity is waived, rely primarily on *Burr, see supra,* note 7. However, *Burr* makes a clear distinction between a grant of sovereign immunity and the ability to execute a judgment. The Court in *Burr allowed* the waiver of sovereign immunity, but simply noted that once a judgment had been obtained, the plaintiff might not be able to execute it because of limitations Congress had placed upon the source from which such claims could be paid. Thus, we have serious questions concerning the

interpretation of *Burr* in the HUD cases relied upon by the Administrator and the district court below. *See* text following note 6, *supra.* However, because Taylor's suit would fall within the waiver of sovereign immunity of section 634(b)(1) whichever interpretation of that section we were to adopt—the Administrator's or Taylor's—we need not decide in this case whether to extend the HUD cases to the SBA.

**10.** Section 694 provides in pertinent part: "All expenses, excluding administrative expenses, pursuant to operations of the Administrator under section 692 of this title shall be paid from the fund."

tions that were specified in that commitment letter were met . . . .

Q: Let's assume that he has alleged that.

A: Then no problem.

Q: Then the answer is the government has waived its sovereign immunity for breach of the commitment to issue the lease guarantee.

A: Well, because then basically what he is alleging is a charge on the obligation itself; a charge to enforce the payment of lease guarantee funds.

The gravamen of the Administrator's argument seems to be that Taylor has failed to allege that the conditions set forth in the commitment letter were met. As noted above, reading Taylor's *pro se* complaint liberally, we are of the view that it sufficiently alleges that all of the conditions of the commitment letters were satisfied. Therefore, we find that Taylor's suit is with respect to the Administrator's powers and duties under section 692 and thus within the scope of section 634(b)(1).

*The judgment of the district court is AFFIRMED IN PART and REVERSED AND REMANDED IN PART.*