**Grover M. and Frances J. CLEVELAND, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 385–83C.**

United States Claims Court.

April 8, 1986.

---

Martin Brickman, Albany, N.Y., for plaintiffs.

Allen C. Peters, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### I. *Introduction*

Plaintiffs in this action, Grover M. and Frances J. Cleveland, seek damages of $200,000 *and* specific performance in remedy of defendant's July 28, 1981 cancellation of their Farmers Home Administration (FmHA) Limited Resource Operating Loan. Said loan had been previously approved by the FmHA County Supervisor on June 18, 1981. Allegedly, in reliance on the FmHA approval, plaintiffs engaged in various transactions in anticipation of receiving the loan and on account of which they were damaged when the FmHA loan was cancelled.

Conversely, defendant claims its cancellation was reasonably justified because plaintiffs admittedly failed to list all of their then-outstanding debts on their May 20, 1981 loan application, as required, and also failed to disclose at that time that they had previously filed a Chapter 7 bankruptcy petition nine days before the FmHA loan application was submitted. Because of the foregoing, defendant has moved for summary judgment arguing that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. Plaintiff opposes defendant's motion asserting the existence of genuine issues of fact, and concomitantly disputes defendant's assertion that the cancellation of plaintiffs' loan was reasonably justified.

Upon a thorough consideration of the parties' respective positions, and without

oral argument, we agree with defendant's position and therefore grant its motion for summary judgment. We believe that on the *undisputed facts,* defendant, as a matter of law, acted well within its authority to cancel plaintiffs' loan approval due to plaintiffs' failure, as required, to provide a complete credit history called for in their May 20, 1981 application.

## II. *Facts*

Plaintiffs, husband and wife, are farmers residing in the City of Albany, New York State. On May 20, 1981, plaintiffs submitted to their local FmHA office an application for a federally funded limited resource operating loan in order that they might lease a farm and purchase the necessary equipment for the operation thereof. Item 21 on the FmHA loan application, required to be submitted, entitled "Financial Statement *as of Date of Application,"* requests the applicant to "LIST ALL DEBTS OWED" (emphasis added). *See* Defendant's Motion for Summary Judgment, March 14, 1984, Appendix. In response, plaintiffs completed Item 21a thereon with two entries under the sub-heading —"All Other Debts ... Describe" as follows: One for $1,200 owed to Ellenville National Bank, Woodridge, New York, and the other for $45.00 owed to New York State Electric & Gas. *Id.* The column of the foregoing sub-heading was totalled to $1,245 on a line styled "Total *All* Debts." *Id.* No other debts were listed by plaintiffs as due and owing *as of the date of the application,* to wit, May 20, 1981. Also on the FmHA application form, directly above plaintiffs' signatures, was, *inter alia,* the following statement:

*I CERTIFY that the statements made by me in this application are true, complete and correct to the best of my knowledge and belief, and are made in good faith to obtain a loan.*

*Id.* (emphasis added).

Following the filing of plaintiffs' May 20, 1981 application, by letter dated June 4, 1981 plaintiffs were informed that their application was "favorably considered by the County Committee" and that they had been "made eligible for a Limited Resource Operating Loan." Defendant's Motion, Appendix. Said letter concluded by informing plaintiffs that their application would continue to be processed, and to wait for further correspondence from FmHA. While not completely clear from the record, at some point thereafter plaintiffs were notified that their loan had been approved. Whereupon plaintiffs and the FmHA County Supervisor executed a "Certification Approval" containing the following statement at the end thereof:

TO THE APPLICANT: As of this date *"6/18/81"* this is notice that your application for the above financial assistance from the Farmers Home Administration *has been approved,* as indicated above, *subject to* availability of funds and *other conditions required by the Farmers Home Administration.* If you have any questions contact the County Supervisor.

Plaintiffs' Petition, Exhibit 3 (emphasis added).

Less than two weeks later, however, on June 30, 1986, plaintiffs were informed by both telephone and by letter dated the same day, that their loan approval had been temporarily rescinded. The reason given for not proceeding with processing the loan was that FmHA had recently been informed that *on May 11, 1981,* nine days *prior to* the filing of plaintiffs' loan application (*i.e.,* May 20, 1981), plaintiffs had filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York. The FmHA, therefore, decided to place plaintiffs' "FmHA Operating Loan ($86,500) on hold until" it was able to "fully ascertain the implications of the Chapter 7 filing." Defendant's Motion, Appendix.

In furtherance of the foregoing, approximately one month later, by letter dated July 28, 1981, FmHA's earlier approval of plaintiffs' loan application was formally revoked. The letter stated that plaintiffs' loan application was officially "transferred" to an "ineligible" status because:

1) *Your signatures* dated May 20th, 1981 to item # 23 of FmHA form # 410–1 "Application for FmHA Services" which states: ... *"I CERTIFY* that the statements made by me in this application are true, complete and correct to the best of my knowledge and belief, and are made in good faith to obtain a loan.[*sic*]" *represent a failure to provide complete information by not informing FmHA of a petition for Chapter 7 bankruptcy* (case # 81–30254) filed May 11, 1981 in Southern District of New York Bankruptcy Court *and by listing a debt of $1,200.00 with the Ellenville* National Bank of Woodridge from June 30th, 1980 reported as charged off.

2) FmHA regulation 1910.5 (a)(1) indicates credit worthiness will not indicate unacceptable credit history for bankruptcy, foreclosure, judgment or delinquency which occurred more than 36 months before the application, if no similar situations have occurred.

Defendant's Motion, Appendix (emphasis added). While not a model of clarity, we believe this letter alleges and overtly informs plaintiffs first that they violated their certification of truthfulness in completing the credit history portion of their application in that they failed to disclose *all debts outstanding as of May 20, 1981,* which then aggregated $14,960.93, and second, that had FmHA known of these facts from the outset, its evaluation of plaintiffs' credit worthiness would have been different.[1] Finally, the July 28 letter outlined plaintiffs' right to appeal the foregoing denial to the State FmHA director within 15 days.

Defendant argues, in its motion for summary judgment, that the precise facts which were deemed by FmHA to constitute a reasonable basis upon which to revoke the loan approval were (1) plaintiffs' failure

to list on its May 20, 1981 loan application 22 of 24 debts *then due and owing* on the date the FmHA application was filed; (2) plaintiffs' listing of two debts only on their loan application (*also* listed on the bankruptcy schedule) purporting to represent that on May 20, 1981, they had only two debts aggregating $1,245; and (3) plaintiffs' failure to inform FmHA of their May 11, 1981 bankruptcy petition. The debt discrepancy was discovered by FmHA when it compared the "all debts" section of the bankruptcy petition with the "all debts" section of the FmHA loan application. On the former, some 24 unsecured debts were listed, while on the latter, only two debts were listed, both of which were reported on the bankruptcy schedule.

### III. Contentions of the Parties

Plaintiffs' position is that by signing the June 18, 1981 Certification Approval, the defendant, FmHA, irrevocably committed itself to provide the FmHA loan funds stated therein, and thereby left defendant no basis in law to effect a cancellation. As a result, plaintiffs aver that their failure to disclose the previous bankruptcy filing is immaterial. Plaintiffs reach this conclusion on the premise that (1) no question requesting bankruptcy information appeared on the FmHA loan services form; and (2) the applicable regulations governing FmHA loan eligibility (7 C.F.R. § 1910.5 (1981)) preclude defendant from asserting bankruptcy as a basis for denial without both an investigation and a complete statement as to why said factor was relevant—a statement which defendant has allegedly not, as of yet, furnished. *Id.* § 1910.6(b). In any event, plaintiffs conclude, there are genuine issues of material fact as to whether defendant did indeed comply with §§ 1910.6 and 1910.5.

---

**1.** According to the October 20, 1981 letter from the FmHA State Director to plaintiffs, they were advised that "the Committee was of the opinion that failure to fully disclose your financial position on your loan application raised questions about your credit worthiness," and under such circumstances "FmHA regulations require that the application be returned to the Committee

for review." Defendant's Motion, Appendix. Plaintiffs attempted to obtain some review of their adverse determination. That letter makes clear, however, that plaintiffs' attempted review was not a proper appeal as of right as outlined in the July 28, 1981 letter, *supra. See id.* Moreover, that October 20 letter informs plaintiffs that their 15 day period for appeal had expired.

Defendant, of course, disputes these allegations citing its interpretation that 7 U.S.C. § 1983(b) and § 1910.5(b) and (c) required plaintiffs to list their bankruptcy filing and credit history including net worth on the application regardless of whether any question specifically requested bankruptcy information in so many words. Defendant urges that "[t]his information bore directly on plaintiffs' credit history, their credit worthiness, and the FmHA's ability to provide supervision and cooperate with plaintiffs to ensure the success of their operation and to ensure that the conditions and terms of the loan were carried out." Defendant's Motion for Summary Judgment, March 14, 1984, at 9. More importantly, defendant argues, the statutory and regulatory discretion of the FmHA in administering loans is well broad enough to justify revocation of a previous loan approval where defendant's discovery (*sua sponte*) of plaintiffs' bankruptcy and 22 *unreported* loans, bearing on their *net worth* at the filing of their application, represented a material and profound change in financial position which jeopardized the success of the loan. In support of the FmHA's wide discretion in the area of loan supervision, defendant cites *Dahl v. United States*, 695 F.2d 1373 (Fed.Cir. 1982); *Tuepker v. Farmers Home Administration*, 708 F.2d 1329 (8th Cir.1983); *Copake Lake Development Corp. v. United States*, 490 F. Supp. 386 (E.D.N.Y.1980); *Romeo v. United States*, 462 F.2d 1036 (5th Cir.1972). Finally, defendant cites various regulations which it alleges "demonstrate that an eligibility determination and subsequent loan approval may be reassessed at any time upon the discovery of additional information indicating that the original determination may be in error." Defendant's Reply Brief, June 13, 1984, at 2–3, citing 7 C.F.R. §§ 1910.6(a), 1941.33(b), and 1941.-35.

Plaintiffs explain their failure to list the same debts on the May 20, 1981 FmHA application as were listed on their bankruptcy petition (which was pending on May 20, 1981) as due to their belief that a successful bankruptcy petition would release all debts listed thereon as of the date the petition was *filed*, May 11, 1981, *i.e.*, retroactively from the September 8, 1981 date of discharge in bankruptcy. Therefore, inasmuch as plaintiffs arguably believed that their petition *would be* granted, effective retroactively to May 11, 1981, they did not feel *as of May 20, 1981* (the application date), that they were still liable on the 22 debts not listed as of such date even though the discharge in bankruptcy was not entered until September 8, 1981. In reply, defendant asserts that while this argument may attest to plaintiffs' self-serving motives, it does not "deny the [indisputable] fact that they [plaintiffs] did misrepresent their financial status *at the time of their application*." Defendant's Reply Brief, at 4 (emphasis added). Defendant also points out that plaintiffs' explanation for withholding the debt information is incongruent in that plaintiffs did list *two* debts ($1,245) on their loan application which were also listed on their bankruptcy schedule. According to defendant, "[u]nder plaintiffs' explanation, these [two] debts would also have been discharged in bankruptcy, yet plaintiffs listed them on their application rather than listing no debts at all." *Id.* at 5. Defendant concludes that "[a]lthough an explanation of this inconsistency is unnecessary to granting our motion for summary judgment, it further demonstrates the questionable nature of plaintiffs' after-the-fact explanations." *Id.*

Lastly, defendant directs itself to plaintiffs' assertion that FmHA was required to investigate the reasons for plaintiffs' bankruptcy in·order to determine whether that bankruptcy was an indicia of credit worthiness. Defendant asserts that the regulations do not place such a burden on defendant. Rather, defendant contends that the regulations place the burden on plaintiffs, "the applicant," to satisfactorily demonstrate to the FmHA that any bankruptcy within 36 months of applying for a loan was excusable and beyond their control. *See* § 1910.5(c)(4). In fact, defendant argues, the record shows plaintiffs did at-

tempt such a showing by a letter dated July 11, 1981, which was considered by the FmHA supervisor and rejected.

## IV. *Discussion*

Against the foregoing, we view the precise issue in this case to be—whether, given plaintiffs' failure to accurately and completely report their financial status, *i.e.,* their outstanding obligations, on their FmHA loan application, the defendant had the discretionary authority to cancel such loan, after formal approval, upon discovery of the failure to report all liabilities which indicates that on consideration of same the initial eligibility determination may have been erroneous. Relying on their belief that defendant did not possess such authority to cancel, plaintiffs seek relief in the form of both specific performance and money damages. In essence, plaintiffs seek the benefit of their bargain and restitution for those uncompensated efforts they undertook in reliance on the cancelled loan.

▆▆▆ Taking the specific performance claim first, as our disposition turns on jurisdictional considerations, discussion will be brief. While defendant has moved for summary judgment, we believe the resolution of a claim for specific performance is more properly the subject of a motion to dismiss for lack of subject matter jurisdiction. RUSCC 12(b). From the beginning, the Tucker Act has never been held to be a valid jurisdictional source for this court to base the award of a general equitable remedy such as specific performance. The case authority so holding is legion. *See United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Richardson v. Morris,* 409 U.S. 464, 465–66, 93 S.Ct. 629, 630–31, 34 L.Ed.2d 647 (1973); *Jesko v. United States,* 3 Cl.Ct. 730, 732 (1983); *Busby School of the Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 596, 601 (1985). The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, 40 (1982), codified at 28 U.S.C. § 1491(a)(3) (1982), is the genesis of this court's limited injunctive authority. Sec-

tion 1491(a)(3) limits this court's equitable authority to "contract claim[s] brought before the contract is awarded...." 28 U.S.C. § 1491(a)(3). That is to say, our equitable jurisdiction can only be invoked when there is a breach of the implied contract to fairly and honestly consider all responsive bids. *United States v. Grimberg,* 702 F.2d 1362, 1367 (Fed.Cir.1983); *Ingersoll-Rand Co. v. United States,* 2 Cl.Ct. 373, 375 (1983). Moreover, it is settled in this court that Congress's waiver of sovereign immunity in § 1491(a)(3) is to be strictly construed and may not be expanded by implication. *International Graphics, Division of Moore Business Forms, Inc. v. United States,* 4 Cl.Ct. 186, 192 (1983); *Speco Corp. v. United States,* 2 Cl.Ct. 335, 336–37 (1983); *see also United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). To the extent, therefore, that plaintiffs seek an order granting it specific performance and directing the FmHA to award them the disputed loan contract, such power is beyond the legitimate jurisdiction of this court.

▆▆▆ As for plaintiffs' damages claim, which claim is, of course, clearly within our Tucker Act jurisdiction, we believe the FmHA possessed sufficient authority to cancel plaintiffs' loan upon learning of the indisputable extensive and material misstatements made on the credit history (*i.e.,* "Debts Owed") portion of plaintiffs' FmHA loan application. As a threshold consideration, it is clear beyond cavil that the existence of the *unreported* 22 debts ($13,-535.93) was information necessary to the proper statutory administration of plaintiffs' FmHA loan. This is particularly true inasmuch as their counsel in his July 7, 1981 letter to the Farm Program Chief stated that "Mr. Cleveland was in a position that he could not reasonably expect to ever be able to repay his obligations without declaring bankruptcy." Plaintiffs' Opposition Brief, May 21, 1984, Appendix. Beginning with the authorizing statute, 7 U.S.C. § 1983 (1982), it is axiomatic that Congress has, for a distinct purpose, required the Secretary of Agriculture to en-

sure that FmHA loan applicants "furnish a written statement showing the applicant's net worth." *Id.* § 1983(a). Section 1983(b) further requires the FmHA county committee to use this financial information as a predicate to certify that the applicant meets "the eligibility requirements for the loan, and has the ... ability to carry out the proposed operations...." *Id.* § 1983(b). This language also makes clear that within the certification process, Congress clearly contemplated the need for an in-depth analysis of the applicant's credit worthiness. Therefore, given the above, we believe that plaintiffs' admitted decision to withhold notice of the existence of 22 delinquent debts on May 20, 1981, directly undermined the express statutory duties of both the Secretary and the FmHA county committee.

The importance of the applicant's full credit history to the performance the requisite certification is also underscored by the regulations implementing § 1983. At 7 C.F.R. § 1910.5, it states that "[c]redit history *will be* a consideration to the extent that it is used in evaluating all applicants for similar types and amounts of credit." § 1910.5(b) (emphasis added). Reference is also there made to the need of the FmHA to even consider the two specific items plaintiffs knowingly excluded from their application. For example, § 1910.5(c) outlines the weight to be given to evidence of both bankruptcy and "delinquent payments of the applicant...." § 1910.5(c). Again, as with the authorizing statute itself, FmHA regulations set up a detailed system to obtain and analyze the credit history of applicants. Plaintiffs' decision to misstate the credit history portion of their application as of May 20, 1981, therefore, directly impeded the regulatory duties of the FmHA administering officials.

There is no doubt that the foregoing statutory and regulatory provisions clearly demonstrate the need as well as the requirement for the lending agency to meticulously scrutinize the credit worthiness of potential loan applicants. Given this obvious legal mandate, one can only conclude that plaintiffs' argument, that the FmHA (even after being misled) did not have sufficient authority to reassess their eligibility, is totally frivolous. We believe that the precise authority for FmHA to undertake such a reassessment, as detailed *infra,* is broadly supported by statute, regulation, and applicable case law binding on this court.

Returning to § 1983, FmHA's authority to reassess eligibility is statutorily provided for pursuant to the Secretary's obligation to establish "such provision for supervision of the borrower's operations as the Secretary shall deem necessary to achieve the objectives of the loan *and protect the interests of the United States....*" 7 U.S.C. § 1983(d) (emphasis added). This oversight supervisory function is precisely the role the FmHA was fulfilling when it issued the July 7 and July 28, 1981 letters to the plaintiffs. This supervisory function is also supported by the regulations implementing § 1983. In this connection, 7 C.F.R. § 1910.6(a) states that "[w]hen the applicant has been determined eligible for assistance and additional information becomes available that indicates the original determination may be in error, *the application will*[2] *be reconsidered taking the new information into account*" (emphasis added). Like any responsible lending organization, FmHA was logically required to exercise a continuing, supervisory authority over applications in process, those granted, and those upon which loans had been actually extended to "protect the interest of the United States." 7 U.S.C. § 1983(a).

Therefore, because of the FmHA's obligation to seek out and evaluate credit history, to use that credit history in processing loan applications, to continuously review and supervise those loans, and to be forever mindful of the effects of new and "additional information" on the protected government interest, it is again incredulous to encounter plaintiffs' argument that in spite of these continuing obligations, the FmHA was nevertheless prohibited from

---

**2.** The word "will" is defined in *Webster's Dictionary* to mean a "requirement or command."

taking that action which would be necessary to carry out those precise obligations. In fact, we believe that because § 1910.6(a) provides that "the application will be reconsidered taking the new information into account" when the original determination may be in error, as was decided here, the FmHA was compelled to revoke plaintiffs' eligibility for a fresh look—in order "to protect the interests of the United States." 7 C.F.R. § 1910.6; 7 U.S.C. § 1983(d). It is simply inconsistent to argue, as plaintiffs do, that, given this broad and continuing oversight obligation, FmHA could be held to have committed itself *irrevocably* to extending a loan by signing a loan certification.

Moreover, irrespective of the illogic of plaintiffs' position, we note in particular that the Certification Approval relied on by plaintiffs *itself* is *expressly made subject* to applicable FmHA regulations.[3] Thus, as a matter of law, we see no impediment to defendant withdrawing eligibility, based on the newly-discovered evidence, pursuant to 7 C.F.R. § 1910.6(a). In those circumstances, FmHA acted to "protect the interests of the United States" by withdrawing the loan approval, which was well within the scope of its statutory and regulatory authority. This is so because we firmly believe that plaintiffs' conduct in securing the loan in issue was, if nothing else, clearly contrary to "the interests of the United States." Plaintiffs' questionable conduct constituting one basis for revocation cited in the July 28, 1981 notice letter, we find FmHA's revocation based thereon to be entirely within the intendment of the statutory and regulatory scheme described herein.

Although we find the foregoing statute and regulations cited herein to be sufficient authority to support the FmHA's action, on the facts of this case, we note in addition that it has been held that as a matter of sound discretion, the FmHA's inherent loan supervisory authority is a sufficient basis, in and of itself, to justify the cancellation of the previously approved loan. This point was made clear by the Federal Circuit in the case of *Dahl v. United States*, 695 F.2d 1373 (Fed.Cir.1982). In *Dahl*, an FmHA loan was cancelled as here, after approval, based, *inter alia*, on FmHA's determination that subsequent to approval, plaintiffs' financial condition had sufficiently worsened so as to jeopardize the success of the loan. Plaintiffs in *Dahl* characterized this cancellation as a breach of the loan contract and an abuse of administrative discretion. The Court of Appeals disagreed. Relying on 7 U.S.C. § 1983, as well as many of the regulations incorporated in plaintiffs Cleveland's contract,[4] the court held:

> *Wide discretion is conferred on county supervisors by the statutes and regulations to supervise loans* and to see that ... the interests of the government are protected.

> \* \* \* \* \* \*

> In the instant case, the County Supervisor, in the reasonable exercise of his discretion, determined that in view of the changed circumstances that occurred in the affairs of the plaintiffs *after their loan was approved,* ... they would not be able to repay the FmHA loan. *Under these conditions, the supervisor had the right and also the duty, for the protection of the interests of the government, not to release the loan funds.* We find no abuse of discretion or breach of con-

---

**3.** On the "Certification Approval" form, it states: "this is notice that your application for the above financial assistance from the Farmers Home Administration has been approved, as indicated above, *subject to availability of funds and other conditions required by the Farmers Home Administration."*

Additionally, the approving official certified to the fact that "the Government agrees to advance such amount to the applicant ... *subject to conditions prescribed by Farmers Home Ad-*

*ministration regulations...."* Plaintiffs' Petition, Exhibit C (emphasis added).

**4.** The regulations in effect in the *Dahl* case have been modified since the transaction in the case at bar. However, those cited to in this opinion, § 1910 *et seq.* (1981), were in effect for purposes of the *Dahl* case as § 1801 *et seq.* (1976). Certain regulations relied on in *Dahl*, on the other hand, like § 1831, were *not* in effect at the time of the transaction in the case at bar.

tract on his part in refusing to disburse the funds to the plaintiffs.

*Dahl,* 695 F.2d at 1380–81 (emphasis added).

Like *Dahl,* the plaintiffs here underwent a drastic change in their net worth (a decrease of $13,715.93) *in the eyes of the FmHA* from the time the loan application was filed, to the point in time just prior to· the disbursement of funds. That the change of circumstances herein was due to the post-approval *discovery* of debts *existing* at the time of approval, as opposed to the *actual incurrence* of post-approval debts as in *Dahl,* is a distinction without a significant difference. The relevant undisputed fact is that plaintiffs' credit history (net worth) as perceived by FmHA at the filing of the application (May 20, 1981) compared to their net worth following discovery of the additional debts put an entirely different face on their credit worthiness. In both *Dahl* and the case at bar, as far as the FmHA was concerned, each applicant's outstanding liabilities had increased to an unacceptable level *subsequent* to the loan approval date. On that basis, we find that in the case at bar, like in *Dahl,* FmHA breached no contract in exercising its broad discretion to terminate the loan. Additionally, as in *Dahl,* we find that the applicant must be certified again by the County Committee as eligible on the basis of the changed circumstances of a loan is to be made. 7 C.F.R. § 1910.6(a).

■ We also find plaintiffs' assertion, *i.e.,* that *defendant* was required to investigate the bankruptcy to determine whether it was excusable, to be meritless. The governing regulation is § 1910.5(c) which states in pertinent part as follows:

(c) *Creditworthiness.* When considering creditworthiness of an applicant, the following will not indicate an unacceptable credit history.

\* \* \* \* \* \*

(4) *Recent bankruptcy,* foreclosure, judgment or delinquent payment *when the applicant can satisfactorily demonstrate that:*

(i) The circumstances causing any of the above were of a temporary nature and were beyond the applicant's control. Example: loss of job; delay or reduction in government benefits, or other loss of income; increased living expenses due to illness, death, etc.

(emphasis added). That plaintiffs' bankruptcy filing was "recent" (*i.e.,* within 36 months of filing the FmHA application) is indisputable. Because this regulation makes clear that for "recent" bankruptcies, the burden is on "the applicant" to "satisfactorily demonstrate" the existence of an excusing circumstance, we find plaintiffs' contra argument to be baseless. The language of the regulation could not be clearer. Plaintiffs had an opportunity to make such a showing pursuant to their administrative appeal. However, they failed to make any formal appeal. *See supra* note 1.

■ Finally, in view of the foregoing, we also agree with the defendant that any explanation as to *why* plaintiffs misstated their credit history is immaterial inasmuch as plaintiffs do not *deny* that they did, in fact, misstate their credit history and materially understated their net worth. We would be remiss if the court did not comment further relative to the conduct of plaintiffs. The document submitted to FmHA by plaintiffs to establish their eligibility was styled "Financial Statement As of Date of Application." Stated simply, said document elicited, *inter alia,* plaintiffs' net worth, their credit worthiness as of that specific date—to wit May 20, 1981. In spite of the clear unambiguous request for financial data, plaintiffs urge the specious and bizarre argument on this court that they did not inform FmHA of the other 22 then currently outstanding debts because their attorney informed them that a successful bankruptcy petition would release all debts listed thereon as of the date the petition was filed, May 11, 1981. It strains credulity that this court must address such a transparent and frivolous argument whereas here plaintiffs' bankruptcy petition was not granted until September 8, 1981, over four months *after* the

FmHA application was filed on May 20, 1981. And the undeniable fact is that said application called for plaintiffs' net worth as of *May 20, 1981*, the date of the filing.

The court finds plaintiffs' conduct most distressing particularly whereas here they actually listed on the loan application two of the very debts they claim were released retroactively by the mere bankruptcy filing. Why plaintiffs listed these two, and not the other 22 debts, if they indeed believed the bankruptcy filing released all debts listed thereon, is a mystery. This is particularly true whereas here plaintiffs have not cited this court to one scintilla of applicable case law in support of their position.

## V. *Conclusion*

In consideration of the foregoing, defendant's motion for summary judgment is hereby granted. Plaintiffs' petition is dismissed. Full costs shall be awarded to the prevailing party.

IT IS SO ORDERED.