**A.L.T. CORPORATION,**
**Plaintiff-Appellant,**

v.

**SMALL BUSINESS ADMINISTRATION,**
**Defendant-Appellee.**

No. 85–2204.

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1986.

Daniel R. Rutherford, San Antonio, Tex., for plaintiff-appellant.

Eric S. Benderson, Associate Gen. Counsel Office of Litigation, Washington, D.C., Helen M. Eversberg, U.S. Atty., Gordon D. Laws, Asst. U.S. Atty., San Antonio, Tex., for defendant-appellee.

Before GARWOOD and HILL, Circuit Judges, and WILL,* Senior District Judge.

ROBERT MADDEN HILL, Circuit Judge:

An aggrieved business which had attempted to purchase repossessed collateral held by the Small Business Administration (SBA) obtained a state court default judgment against the SBA and then sought to enforce the judgment against the SBA in federal district court. The state court in rendering judgment had jurisdiction over the SBA and made an award based on the business' claim for damages. Another court of this state would have honored such a judgment against collateral attack on state law grounds. In dismissing the federal suit, the federal court failed to accord this judgment the full faith and credit it deserved under state and federal law, and we reverse in part. However, the state court clearly lacked jurisdiction over the portion of the claim representing a theory of recovery sounding in tort, and we affirm that portion of the federal district court's dismissal.

### I.

On July 1, 1982, A.L.T. Corporation (ALT) filed suit in state district court in San Antonio, Texas, naming as defendants Republic Bank Medical Center (Republic Bank) and the SBA. The petition alleged that ALT, Republic Bank, and the SBA had

---

* Senior District Judge of the Northern District of Illinois, sitting by designation.

entered into an oral contract in May 1982 whereby ALT agreed to buy, and Republic Bank and the SBA agreed to sell, certain collateral which Republic Bank and the SBA had acquired through foreclosure proceedings.[1] According to the petition, a vice president of Republic Bank called this contract "iron-clad," but the SBA and Republic Bank breached the contract by failing to sell the property on the date agreed. ALT alleged that it was injured in the amount of $30,000, the amount of profit ALT expected upon resale of the collateral. The petition alleged two causes of action: one for breach of contract and one for violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. and Com. Code Ann. §§ 17.41–.63 (Vernon 1986) (DTPA).

On July 8 the local sheriff's department personally served a citation and copy of the petition upon Charles Motz, and SBA loan officer in San Antonio.[2] The SBA's San Antonio District Office sent copies of the citation and petition to the SBA's Office of General Counsel in Washington, D.C. According to uncontested affidavits, David Kohler, an attorney at the SBA's Office of General Counsel, discussed the case with Billy Bowe, the Supervisory General Attorney at the SBA's San Antonio District Office. According to Bowe, Bowe then called ALT's attorney to inform him that the requirements of service under Fed.R.Civ.P. 4 had not been met, in that service had not been made upon the United States Attorney General nor upon the appropriate United States Attorney.

On September 16 ALT filed an amended petition alleging the same causes of action. ALT forwarded by certified mail a copy of that pleading with a new citation issued to "Small Business Administration, by serving William French Smith, the Attorney General of the United States of America, Washington, D.C." This citation and amended petition were received in the SBA's mailroom in Washington on September 28 and the postal return receipt card was stamped by mailroom personnel on that date. Kohler received these documents on October 1. The SBA never filed any responsive pleadings in state court, nor did it make any appearances there.

On October 25, the state district judge signed a default judgment in favor of ALT against the SBA. The judgment recited that "Although citation was duly served on Defendant Small Business Administration and returned in accordance with Rules 106 and 107 of the Texas Rules of Civil Procedure, said Defendant failed to appear or answer within the time prescribed by law, and has defaulted." The judgment was in the amount of $93,000, representing $30,000 in actual damages, $60,000 in damages pursuant to the DTPA, and $3,000 in attorney's fees pursuant of the DTPA. On October 28 Kohler telephoned the United States Attorney's Office for the Western District of Texas in San Antonio, and learned that no record of the case existed in that office. Kohler called ALT's attorney later that day to inform him of service requirements, but ALT's attorney "indicated that he thought he already had a

---

1. In its pleadings below, the SBA gave the following uncontradicted account of the transaction. Under its guaranteed lending authority, the SBA issued a 90% guarantee of a $170,000 loan made to a small business known as Boodles, Inc. *See generally* 15 U.S.C. § 636(a). The lender was Republic Bank, then known as Southwest National Bank of San Antonio. Boodles, Inc., defaulted, and upon Republic Bank's request the SBA purchased the 90% guaranteed interest in March 1982. On May 12, personal property collateral securing the loan was sold to a third party for $35,000. The collateral consisted of restaurant equipment and furnishings. The SBA describes ALT as "an unsuccessful bidder" on this property.

2. A vice-president of Republic Bank was similarly served on July 7. Republic Bank filed an answer in the form of a general denial on July 26. ALT filed a motion for severance and a separate trial on its claims against the SBA on October 25. Also on October 25, the date a default judgment was signed as against the SBA, the state district judge signed an order granting the motion to sever. An identical order was signed on October 27 by the judge and attorneys for ALT and Republic Bank. The record does not reflect what, if any, further events occurred in the separate cause against Republic Bank.

judgment." According to Kohler, the Office of General Counsel first received a copy of the default judgment on March 15, 1983.[3] Except for its defensive posture in ALT's present federal suit, the SBA has never sought to challenge this judgment in any forum.

On September 27, 1983, ALT filed the current action against the SBA in federal district court in order to enforce its state default judgment. The parties filed cross-motions for summary judgment. The district court determined that the state court judgment was not entitled to full faith and credit in federal court because the state court lacked personal jurisdiction over the SBA. The district court granted the SBA's motion for summary judgment and dismissed the action. ALT appeals.

## II.

Our starting point is the federal full faith and credit statute, first enacted in 1790, now codified at 28 U.S.C. § 1738: "Acts, records and judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."[4] "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra*

v. *Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 61 (1984). "Section 1738 embodies concerns of comity and federalism that allow the State to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274, 281 (1985).

■ Nevertheless, these principles of full faith and credit are subject to some further limitations. A major limitation is the caveat that a state court judgment is entitled to its preclusive effect in another forum only if the first court has "power to pass on the merits—had jurisdiction, that is, to render judgment." *See Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Association*, 455 U.S. 691, 704, 102 S.Ct. 1357, 1366, 71 L.Ed.2d 558, 570 (1982) (quoting *Durfee v. Duke*, 375 U.S. 106, 110, 84 S.Ct. 242, 244, 11 L.Ed.2d 186, 190 (1963)). "This limitation flows directly from the principles underlying the Full Faith and Credit Clause. It is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties." *Id.*, 455 U.S. at 704, n. 10, 102 S.Ct. at 1366 n. 10, 71 L.Ed.2d at 558 n. 10.[5]

3. The record does not indicate when the notice of judgment first arrived at the SBA, nor the length of time between its arrival and the receipt of the judgment by the Office of General Counsel. Under Rule 306a of the Texas Rules of Civil Procedure, the state court clerk sends notice of a final judgment to each party immediately after its signing. *See* Tex.R.Civ.P. 306a(3) (formerly at Tex.R.Civ.P. 306d).

4. This provision is the statutory complement applicable to federal courts of the Constitution's full faith and credit clause: "Full Faith and Credit shall be given to each State to the Public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof." United States Const. art. IV, § 1.

5. A prior panel of this court has suggested in dicta that this traditional two-level analysis of looking to state and then federal principles to determine the preclusive effect of a state judgment in federal court has been amended by *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). *See Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1021 n. 6 (5th Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983). The *Fehlhaber* footnote suggested that *Kremer* abandoned the two-level approach and ignored the traditional inquiry into the state court's subject matter jurisdiction by implying a new "unified theory of full faith and credit" that distilled the federal principles of a bare due process test. *Id.* Since state courts are required in any event to enforce the requirements of due process, the *Fehlhaber* footnote hinted that no inquiry into federal requirements was necessary; however, the *Fehlhaber* panel followed the two-level approach in

The SBA has leveled its attack on the Texas judgment on three grounds which we have organized to correspond to the full faith and credit principles discussed above. First, the SBA claims that the judgment is void under Texas law, thus rendering it unworthy of full faith and credit in federal court, since such a judgment would be subject to collateral attack in a Texas court. Second, the SBA argues that the original Texas court lacked personal jurisdiction over the SBA because service of process was improper under Rule 4 of the Federal Rules of Civil Procedure. Finally, the SBA contends that the Texas court lacked subject matter jurisdiction because the SBA is cloaked in sovereign immunity for the types of action brought by ALT. We discuss each of these contentions in turn.

### A.

The SBA's first argument turns on the application of Texas rules of collateral attack and claim preclusion. The SBA claims that the service of process effected by ALT did not comport with the technical requirements of Rule 106(a) of the Texas Rules of Civil Procedure.[6] The SBA first argues that mail delivery of the amended complaint to the SBA's Washington office was improper under Rule 106(a) because delivery was not restricted to the addressee, and because the return receipt was stamped, rather than signed, by an employee of the SBA's mailroom.[7] The SBA further contends, as it convinced the federal district court, that personal service upon Motz, the SBA loan officer in San Antonio, was ineffective because ALT did not affirmatively show that Motz was in fact the SBA's agent for service of process. *Cf. Encore Builders v. Wells*, 636 S.W.2d 722, 723 (Tex.App.—Corpus Christi 1982, no writ) (reversal of judgment on direct appeal where no such showing of agency); *Bankers Life and Casualty Co. v. Watson*, 436 S.W.2d 404, 406 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.) (same).

■ The SBA is correct insofar as it contends that Texas law is crucial to this portion of the inquiry. As part of full faith and credit analysis, we look to state law to determine how much credit the state judgment deserves. *See Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1020 (5th Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983). "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Marrese*, 470 U.S. at 380, 105 S.Ct. at

---

text, refusing to resolve this "tension" in Supreme Court jurisprudence. *Id.*

We take the same general tack as the *Fehlhaber* panel, as we choose to follow the traditional two-level analysis used in other Supreme Court cases. *See, e.g., Underwriters; Williams v. North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). However, we express no conclusion as to whether the *Fehlhaber* panel was correct in detecting a "tension" created by *Kremer*. *Kremer* did not involve a question of a state court's jurisdiction over the parties or the subject matter of the plaintiff's claim. The *Kremer* court concluded that a former employee who had litigated his job discrimination claim in a state agency with state court review could not relitigate his claim under federal law in federal court, holding that Title VII did not so amend the full faith and credit requirements of § 1738. Since no jurisdictional questions were raised, the *Kremer* court could not discuss the doctrines used to analyze such issues. *Kremer*

did not expressly state that it meant to alter the long-standing two-level approach.

6. The SBA draws our attention to the Texas requirements of service of process:

> Unless the citation or an order of the court otherwise directs, the citation shall be served by any officer authorized by Rule 103 by
> (1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or
> (2) mailing to the defendant by registered or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

Tex.R.Civ.P. 106(a).

7. The SBA in its latter contention refers also to Tex.R.Civ.P. 107, which provides that the return of citation contain the return receipt "with the addressee's signature."

1332, 84 L.Ed.2d at 281 (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262, 280 (1982)). We therefore examine the Texas doctrines of collateral attack to determine the preclusive effect of the judgment in Texas state court. *Id.* at 1020–21. This fulfills the statutory purpose of section 1738 that the preclusive effect of state court judgments in federal court be determined by the law of the state rendering the judgment. *See Migra*, 465 U.S. at 81, 104 S.Ct. at 896, 79 L.Ed.2d at 62.

█ However, we do not agree with the SBA's interpretation of Texas law. Regardless of whether these alleged defects of service of process would have sustained a direct attack on the judgment, Texas courts refuse to entertain collateral attacks based on service defects if the judgment recites that the defendant was fully served. *See, e.g., Joiner v. Vasquez*, 632 S.W.2d 755, 757, 759 (Tex.App.—Dallas 1981, writ ref'd n.r.e.), *cert. denied*, 464 U.S. 981, 104 S.Ct. 422, 78 L.Ed.2d 357 (1983). "[I]t is the settled rule of this state that where a judgment is collaterally attacked, plain jurisdiction recitals contained therein must be accorded absolute verity." *Pure Oil Co. v. Reece*, 124 Tex. 476, 78 S.W.2d 932, 934 (1935). The judgment here asserted that the court properly assumed personal jurisdiction, in that Rules 106 and 107 were complied with in ALT's service of process upon the SBA. This judgment was thus subject to the Texas absolute verity rule, and is not open to collateral attack.

The SBA's contention that the record affirmatively establishes the defects in service is not well taken. Under Texas law, "[a] clear and definite recital of jurisdic-

tional findings imports absolute verity, and is conclusive of the issue of jurisdiction." *See* 48 Tex.Jur.3d *Judgments* § 326 (1986). The general rule is that, where such recitals appear in the judgment, no evidence—not even the remainder of the record—will be received to contradict these findings. *See id.* A judgment asserting the due service of process may not be attacked in a collateral proceeding, notwithstanding evidence from the remainder of the record which indicates to the contrary. *E.g. Bynum v. Davis*, 327 S.W.2d 673, 675–76 (Tex.Civ.App.—Houston [1st Dist.] 1959, no writ). The purpose of this longstanding Texas doctrine is to achieve the finality of judgments. 48 Tex.Jur.3d *Judgments* § 326. Although it is occasionally harsh in result, Texas courts have created and upheld the absolute verity rule as a policy to protect their judgments from indefinite suspicion and unwarranted attack. *See id.* The SBA has not contended that any of the exceptions to this rule apply.[8]

**B.**

**1.**

Having determined that a Texas court would otherwise enforce the judgment, we next examine the SBA's claims that the judgment is unenforcible under federal principles. First, the SBA claims that its rights to due process was violated by the state court's rendition of judgment without proper service under Fed.R.Civ.P. 4. Under the waiver of soverign immunity implicit in the "sue and be sued" clause of the Small Business Act, 15 U.S.C. § 634(b)(1), the Administrator of the SBA is expressly subject to suit in state as well as federal court.[9] This statute also empowers the

---

**8.** One exception to the absolute verity rule is where the original court is "absolutely unauthorized to give the relief asked." *See* 48 Tex. Jur.3d *Judgments* § 327 (1986). Another is that a judgment is open to collateral attack when it ·is silent on the issue of jurisdiction. *See id.* These two exceptions, to the extent they apply, are subsumed within our discussion of subject matter jurisdiction. *See infra* part II B 2. We thus presume that a Texas court would not enforce the judgment of a court clearly lacking

subject matter jurisdiction, at least where the judgment itself is silent on this aspect.

**9.** This provision reads in part as follows:
(b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—
(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court....
15 U.S.C. § 634(b)(1).

Administrator to promulgate regulations to "carry out the authority vested in him...." 15 U.S.C. § 634(b)(6). One regulation promulgated by the SBA provides that service of process in a suit against the SBA be accomplished in accordance with Rule 4. *See* 13 C.F.R. § 101.6 (1986). This regulation contemplated that suits against the SBA would be defended by the local United States Attorney. *See id.*

The version of Rule 4 in effect at the time of ALT's original suit in state court provided that service upon an officer or agency of the United States be made by delivering a copy of the summons and complaint to the agency, delivering a copy to the local United States Attorney, and sending by registered or certified mail a copy to the Attorney General. *See* Fed.R.Civ.P. 4(d)(4), (5) (version in effect prior to 1983 amendments).[10] ALT concedes that delivery of a copy of the citation and petition was never made upon the local U.S. Attorney, effectively admitting that this requirement of Rule 4 was not met. The SBA thus concludes that the resulting judgment was void for lack of personal jurisdiction, suggesting a concomitant violation of due process guarantees, and cites as "as case squarely on point" a decision of the Supreme Court of North Carolina, *Finch v. SBA*, 252 N.C. 50, 112 S.E.2d 737 (1960).

■ The SBA's heavy reliance on *Finch* is ill-conceived. The *Finch* plaintiff failed to serve the Administrator of the SBA as provided in Rule 4, as ALT has failed to do here, but the procedural posture of *Finch* was its crucially distinguishing feature. *Finch* was a *direct* appeal taken by the plaintiff from the state's own district court's dismissal of his suit; the Supreme Court of North Carolina affirmed, citing Rule 4 and concluding that no personal jurisdiction had been achieved. Here, on the other hand, a federal court is faced with a *collateral* attack on an unappealed

judgment of a state court. We are constrained, as the *Finch* court was not, by the preclusive effects of full faith and credit principles. The SBA has ignored the interest of finality imposed upon state court judgments by section 1738. The need for finality within our federal system requires the principles of full faith and credit to apply with equal force to questions of jurisdiction. *See Underwriters*, 455 U.S. at 706–07 & n. 13, 102 S.Ct. at 1367 & n. 13, 71 L.Ed.2d at 571–72 & n. 13; *see also infra* n. 17. We are not free to ignore such principles whenever service of process was made in a manner inconsistent with Rule 4.

■ Nor are we persuaded that the manner in which ALT took its default judgment constituted a violation of the SBA's rights to due process. We recognize that a judgment reached without due process is void and may be collaterally attacked notwithstanding section 1738. *See Fehlhaber*, 681 F.2d at 1027. However, due process requirements in a civil case where only property interests are at stake are not the most stringent. "Thus ordinarily all that due process requires in a civil case is proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." *Id.* Obviously, by "proper" service of process the *Fehlhaber* court did not suggest that due process required strict compliance with Rule 4; the default judgment there was entered according to state law. *Id.* at 1019. Rule 4 does not purport to constitutionalize the minimum requirement for valid service of process. *See generally*, 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1064 at 205–06 (1969). Procedural defects constitute a violation of due process only where they "are of sufficient magnitude ... where the defects are 'so unfair as

---

**10.** The current version of Rule 4(d) is similar except that it has substituted "registered or certified mail" for "delivering" as the proper method of service upon the agency itself under Rule 4(d)(5). Delivery was and still is the proper method of serving the local U.S. attorney.

Since Motz, employee of the SBA in San Antonio, was personally served, this change in the Rule would be of no consequence in any event. The SBA does not challenge the validity under Rule 4 of the service by mail upon the Attorney General.

to deprive the ... proceedings of vitality.'" *Fehlhaber*, 681 F.2d at 1027 (quoting *Eagles v. United States*, 329 U.S. 304, 314, 67 S.Ct. 313, 319, 91 L.Ed. 308, 316 (1946)).[11]

■ We cannot conclude that ALT's failure to serve the local United States Attorney worked an unfairness of such magnitude upon the SBA. The San Antonio District office of the SBA had notice of the suit within one week of its commencement, when its loan officer was personally served. The Washington headquarters of the SBA was soon informed of the suit by the district office, leading to a strategy session among the counsel representing each of these two entities. Washington received another citation and an amended copy of the petition shortly thereafter. With full knowledge of the suit, each of these SBA attorneys determined not to inform the local United States Attorney, but rather chose to ignore the state court proceedings while attempting to force ALT's compliance with Rule 4. At no point did the SBA make a special appearance to challenge the assertion of personal jurisdiction,[12] nor did it file a petition for removal to federal district court,[13] two options available to the SBA attorney at that point. When an SBA attorney finally did contact the local United States Attorney, he failed to instruct him to take any action in the case. Within three days after the default judgment was signed, ALT's attorney informed the SBA of its existence. Further inquiry at that point would have permitted the SBA to either make a direct appeal[14] or to challenge the judgment in the original state district court,[15] two of the remedies then still available. In sum, the SBA, instead of pursuing any of various courses of action in state or federal court, chose to ignore—at its peril—the ongoing state court proceedings.[16]

2.

■ The SBA also contends that the state court judgment is void for lack of subject matter jurisdiction and thus unenforcible under full faith and credit principles. The SBA presses this attack in three areas, all related to the doctrine of sovereign immunity. First, the SBA contends that the defects in service of process barred ALT's suit because sovereign immunity has not been waived without exact compliance with Rule 4. Second, the SBA contends that there is no subject matter jurisdiction because ALT's claim is not one of an SBA program beneficiary's. Finally, the SBA argues that the state court clearly lacked subject matter jurisdiction over the DTPA claim, contending that jurisdiction of such a tort claim against the federal government is exclusively federal. We

---

11. In a rare case, this court allows collateral attack of a default judgment for procedural errors amounting to a due process violation. *See, e.g., Bass v. Hoagland*, 172 F.2d 205 (5th Cir.), *cert. denied*, 359 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949). In *Bass*, the defendant's counsel had withdrawn, and the defendant was not aware of the trial date nor had any notice prior to the entry of default judgment, and was fraudulently not informed of the judgment until more than two years after its entry. We do not find that the failure to send notice to the local United States Attorney, once service was performed upon the SBA, "approach[es] the level of irregularity found in *Bass* to constitute a due process violation." *Cf. Williams v. New Orleans Public Service, Inc.*, 728 F.2d 730, 734–35 (5th Cir. 1984); *Fehlhaber*, 681 F.2d at 1027–28.

12. *See* Tex.R.Civ.P. 120a.

13. *See* 28 U.S.C. § 1441.

14. *See* Tex.R.Civ.P. 352–69a.

15. *See McCormack v. Guillot*, 597 S.W.2d 345, 346 (Tex.1980) (district court has thirty days after final judgment in which to exercise its plenary power to vacate, set aside, modify, or amend the judgment).

16. We are unpersuaded by the SBA's dramatic bluster that "[T]he U.S. Attorney's Office would probably have to close to all other business if it had a legal duty to follow up on every query received on whether a particular case was yet in the office in order to detect default judgments taken without proper service." While such concerns of administrative convenience may lie behind the procedure contemplated by Rule 4, we are not prepared to conclude that the service used was so fundamentally unfair as to constitute a violation of due process.

find little merit in the first two contentions, but the third is compelling.[17]

The SBA attempts to revive its claim that Rule 4 was not complied with, an argument also raised above in the context of personal jurisdiction, by asserting it under the rubric of subject matter jurisdiction. According to the SBA, its "sue and be sued" status, 15 U.S.C. § 634(b)(1), is a waiver of sovereign immunity only to the extent that procedures established by the SBA for receipt of service of process are followed. Since ALT failed to serve the local United States Attorney, as contemplied by Rule 4—so runs the argument—subject matter jurisdiction could not exist in any court. The SBA cites *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir.1975), for the proposition that "[a]dherence to the statutory procedure for making a claim against the sovereign is a jurisdictional prerequisite to the benefit of the sovereign's waiver of its immunity." The SBA's reliance on *Molinar* is not well placed.

 *Molinar* was the United States' appeal from an adverse judgment on a claim governed by provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). The United States challenged the district court's jurisdiction because the plaintiff had not made a timely claim for a "sum certain" as required by regulations, but had instead filed a set of bills representing his out-of-pocket damages. *See id.* at 249. The court took a liberal view of the regulatory requirements, finding that a simple computation of the sum of the bills would have yielded a sum certain, and affirmed the plaintiff's recovery. *Id.* Similarly, the SBA here had clear notice of the suit, but

waited for ALT to meet all of the requirements of Rule 4 before it took any action. Although ALT did not follow the exact requirements of the SBA's regulations for service of process, as we explain below its compliance was sufficient to meet jurisdictional requirements.

The SBA attempts to bolster its attack on the state court's subject matter jurisdiction by contending that the ALT's suit is not one contemplated by the "sue and be sued" statutory provision. It contends that ALT is not a program beneficiary in that it was not an actual or potential recipient of SBA assistance or an organization standing in a direct relationship to a recipient. *Cf. Munoz v. SBA*, 644 F.2d 1361 (9th Cir.1981) (district court has subject matter jurisdiction for small business borrower's suit against SBA); *Mar v. Kleppe*, 520 F.2d 867 (10th Cir.1975) (district court had subject matter jurisdiction over suit by individual co-guarantors of a lease guaranteed by the SBA). The SBA's contract with ALT, if it existed at all, according to the SBA, lay completely outside the normal agency/recipient framework which had provided the genesis for previous suits against the SBA. Although the SBA can cite no cases which hold such contract disputes between the SBA and third parties outside a court's jurisdiction, it urges us to adopt this narrow construction of its waiver of sovereign immunity. We decline to do so.

The SBA's argument has overlooked leading Supreme Court decisions interpreting "sue and be sued" clauses. *See Franchise Tax Board of California v. United*

---

17. We recognize that a wide-ranging de novo examination of jurisdictional questions may be inconsistent with full faith and credit principles. The scope of review that one court may conduct to determine a foreign court's jurisdiction to render a challenged judgment is limited. *Underwriters*, 455 U.S. at 706, 102 S.Ct. at 1366–67, 71 L.Ed.2d at 571. "[A] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186, 191 (1963). A similar re-

sult is reached where the losing party had an opportunity to litigate but chose not to. *See Fehlhaber*, 681 F.2d at 1031 & n. 27. Arguably, the state district court fully and fairly considered the issue of personal jurisdiction when it recited ALT's compliance with Texas service of process requirements, a result further supporting our interpretation of the Texas absolute verity doctrine. *See supra* part II A. However, neither the judgment nor the remainder of the state record indicates that the state court decided or even considered any questions of subject matter jurisdiction. This being so, we need give no preclusive effect to the state judgment on issues of subject matter jurisdiction.

*States Postal Service,* 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984); *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). *Burr* established the perspective for interpreting these clauses:

> [W]e start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be limited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.
>
> Clearly the words "sue and be sued" in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings.

309 U.S. at 245, 60 S.Ct. at 490, 84 L.Ed. at 728–29 (citations and footnote omitted) (quoted with approval in *Franchise Tax Board,* 467 U.S. at 517–18, 104 S.Ct. at 2552–53, 81 L.Ed.2d at 451–52).

Congress has given the SBA broad, explicit powers to engage in commercial and business transactions in pursuit of its statutory purposes. *See generally* 15 U.S.C. § 634(b). The SBA is empowered to "take any and all actions" in making or dealing with SBA loans. 15 U.S.C. § 634(b)(7). The SBA may retain or employ attorneys on its behalf. *See* 15 U.S.C. § 634(b)(7). The SBA concedes that it has broad powers to contract with third parties. As an example, the SBA can dispose of real property acquired in connection with SBA loan guarantees. *See* 15 U.S.C. § 634(b)(3). Congress, in a statutory provision immediately adjacent to the SBA's "sue and be sued" clause, specifically empowered the SBA to sell any collateral held in connection with SBA loans. *See* 15 U.S.C. § 634(b)(2).[18] Such a sale was the subject of ALT's alleged contract with the SBA.

 The SBA has made no clear showing that the type of suit brought by ALT was inconsistent with this statutory scheme. The SBA is an agency which Congress "launched into the commercial world" and endowed with authority to "sue and be sued." Although every agency might find it more convenient to be immune from suit altogether, the Congressional plan is otherwise. We perceive no grave interference with the SBA's function as a result of suits such as these. Neither do we find that Congress, in granting regulatory power to its Administrator, contemplated that strict compliance with the

---

**18.** The Administrator of SBA may under regulations prescribed by him, assign or sell at public or private sale, or otherwise dispose of for cash or credit, in his discretion and upon such terms and conditions and for such consideration as the Administrator shall determine to be reasonable, any evidence of debt, contract, claim, personal property, or security assigned to or held by him in connection with the payment of loans granted under this chapter, and to collect or compromise all obligations assigned to or held by him and all legal or equitable rights accuring to him in connection with the payment of such loans until such time as such obligations may be referred to the Attorney General for suit or collection. . . .

15 U.S.C. § 634(b)(2).

SBA's choice of receipt of service be a necessary requirement for waiver of sovereign immunity. The liberal interpretation given "sue and be sued" clauses by *Franchise Tax Board* and *Burr* permits no other conclusion but that the state court had subject matter jurisdiction of ALT's contract claim.[19]

The SBA's final argument we find more persuasive. We have determined above that the state court had jurisdiction of ALT's claims for contract damages, but the SBA also separately challenges that portion of the award which trebled these actual damages under provisions of the Texas DTPA. While the "sue and be sued" clause of the Small Business Act, as we have seen, permits breach of contract actions against the SBA in federal or state court, it makes no provision for actions sounding in tort. The Federal Tort Claims Act (FTCA), at 28 U.S.C. § 1346(b), vests *exclusive* jurisdiction in federal district courts for "civil actions on claims against the United States, for money damages, ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government...." Congress further provided that a "sue and be sued" statute does not authorize suit against a federal agency on claims cognizable under § 1346(b), and that the remedies provided by the FTCA are exclusive in such instances. 28 U.S.C. § 2679(a). The SBA contends that, since the only theory of recovery which would have permitted ALT to treble its actual damages was one based in tort, the state court had no jurisdiction to render an award for an amount greater than ALT's actual contract damages. We agree.

This court faced a similar issue in *Taylor v. Administrator of the SBA*, 722 F.2d 105 (5th Cir.1983). In *Taylor*, a third-party beneficiary of an expected SBA-guaranteed lease sued in federal court for monetary damages under the SBA's "sue and be sued" clause, alleging *inter alia* claims for breach of contract and violations of Texas DTPA arising from the SBA failure to issue these lease guarantees. The *Taylor* panel reinstated the plaintiff's contract claim, holding that the SBA possessed its own fund from which it could pay a judgment. *See id.* at 110–12; *see also supra* note 19. However, the court affirmed the dismissal of the plaintiff's DTPA claims, concluding that the FTCA provided the exclusive remedy for such statutory tort actions. 722 F.2d at 109–10. The application of the SBA's "sue and be sued" authority to DTPA actions was expressly rejected. *Id.* Since the plaintiff had not exhausted his administrative remedies as required by the FTCA, *see* 28 U.S.C. § 2675, his claim was barred.[20]

We follow *Taylor* in holding that ALT's cause of action under the DTPA was barred by the FTCA. The state district court lacked subject matter jurisdiction over this claim. ALT's petition claimed that its cause of action arose from the defendants' misleading and deceptive acts. Such allegations of misrepresentation and fraud sound in tort. *Taylor*, 722 F.2d at 109. Indeed, simple actions for breach of

19. The SBA directs our attention to pre-*Franchise Tax Board* decisions which direct some suits against federal agencies to the exclusive jurisdiction of the Court of Claims. *E.g. Lomas & Nettleton Co. v. Pierce*, 636 F.2d 971 (5th Cir.1981). *Lomas & Nettleton* failed to mention *Burr* in construing a "sue and be sued" clause in an action against the Secretary of Housing and Urban Development (HUD). The *Lomas & Nettleton* court determined that the suit in question, because any resulting damages would be paid from the general United States treasury rather than a separate HUD fund, could only be brought in the Court of Claims. *See* 28 U.S.C. §§ 1346, 1491 (the Tucker Act). However, even assuming this rationale has sustaining vitality,

we find our case distinguishable. There is no indication that the SBA will have to resort to the general federal treasury to pay these damages. Indeed, counsel for the SBA at oral argument conceded that the SBA "pays its own judgments." *See also Taylor v. Administrator of the SBA*, 722 F.2d 105 (5th Cir.1983).

20. We note in passing that, even had ALT's DTPA action been filed in federal court, its claim would have been similarly barred by a failure to exhaust administrative remedies. We also note that punitive damages, such as the treble damages provided by the DTPA, are unavailable under the FTCA. *See* 28 U.S.C. § 2674.

contract are not cognizable under the DTPA—something more, of a tortious nature, is required to state a DTPA claim. *See Dura-Wood Treating Co. v. Century Forest Industries, Inc.,* 675 F.2d 745, 756 (5th Cir.), *cert. denied,* 459 U.S. 865, 103 S.Ct. 144, 74 L.Ed.2d 122 (1982); *Holloway v. Dannenmair,* 581 S.W.2d 765, 767 (Tex. Civ.App.—Fort Worth 1979, writ ref'd n.r. e.). The FTCA requires such actions to be brought in federal court. Accordingly, the district court did not err in refusing to enforce that portion of the state court judgment representing ALT's award under DTPA.[21]

### III.

We reverse the judgment of the district court's in its dismissal of ALT's complaint as to that portion of the state court judgment which awarded ALT its $30,000 in actual contract damages; we affirm the judgment of the district court in its dismissal of the complaint as to that portion of the state court judgment which awarded ALT an additional amount of $63,000 under the DTPA; we remand to the district court for entry of judgment in the amount of $30,000 in favor of ALT and against the SBA.

AFFIRMED in part; REVERSED in part; and REMANDED.

**21.** The only expressed foundation for the state court's award of attorney's fees was the DTPA. *See* Tex.Bús. and Com.Code Ann. § 17.50B(d)(1) (Vernon Supp.1986). *Since we hold that the district court lacked subject matter jurisdiction over the DTPA claim, it follows that attorney's fees claimed exclusively under this statute are not available.* We express no opinion on whether ALT could have claims fees under any other provision of law.