2007 OK CIV APP 7

**Donald GARRETT, Plaintiff/Appellant,**

v.

**OKLAHOMA PANHANDLE STATE UNIVERSITY, Defendant/Appellee.**

**No. 102,253.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 20, 2006.

Certiorari Denied Jan. 16, 2007.

---

R. Pope Van Cleef, Jr., Robertson & Williams, Oklahoma City, OK, and Paul R. Genender, Sean W. Fleming, Hughes & Luce, Dallas, TX, for Plaintiff/Appellant.

Michael Scott Fern, Associate General Counsel, Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, Stillwater, OK, for Defendant/Appellee.

KENNETH L. BUETTNER, Chief Judge.

¶1 On December 13, 2002, Donald Garrett filed a petition in Dallas County, Texas, alleging Oklahoma Panhandle State University negligently failed to maintain his basketball statistics for the academic year (basketball season) 1998–1999, by losing or destroying them; tortiously interfered with his business and contractual relationships with potential employers by failing to report to the NCAA his performance statistics; and breached an implied contract whereby in exchange for his participation in Panhandle State's men's basketball program, Panhandle State would maintain his statistics and report them to the NCAA. He claimed actual and punitive damages because of Panhandle State's breaches of duty and contract. He served the Secretary of State of Texas who forwarded by certified mail January 2, 2003, a copy of the petition to Panhandle State's interim president with return receipt requested. The receipt was signed by the interim president's agent and received in the Secretary of State's office January 7, 2003. Panhandle State did not answer the lawsuit, and a default judgment was taken against it in the District Court of Dallas County, Texas for $2,500,000 in actual damages and $500,000 in punitive damages, plus pre- and post judgment interest. Garrett thereafter filed his judgment in Oklahoma County pursuant to the Uniform Enforcement of Foreign Judgments Act, 12 O.S.2001 § 719 et seq. February 20, 2004. The Board of Regents for Oklahoma State University and the Oklahoma Agricultural and Mechanical Colleges filed a Motion to Transfer, or in the alternative, Motion to Vacate, on the ground that Texas never acquired personal jurisdiction over the correct party. The Motion to Transfer was granted and the matter was heard in Payne County, the situs for venue of the Board of Regents. The parties were permitted to file supplemental briefs and the court heard oral argument. It then vacated the Texas judgment. We affirm.

¶2 Garrett claims that both the granting of the Motion to Transfer from Oklahoma

County to Payne County was erroneous and that the trial court's decision to vacate the Texas court's judgment was erroneous. The matter comes to this court as a summary disposition, pursuant to Supreme Court Rule 1.36(a)(2), and we therefore review it *de novo.*

## VENUE

¶3 We first address the Motion to Transfer. The plain language of the Uniform Enforcement of Foreign Judgments Act, 12 O.S. 2001 § 721,[1] states that the foreign judgment may be filed in "... any county of this state." Garrett registered his judgment in Oklahoma County. The Board of Regents filed a Motion to Transfer to Payne County arguing that 12 O.S.2001 § 133 required venue of an action against the Board of Regents to be brought in the county of its official situs, which was Payne County.[2] Among other cases, the Board of Regents cited *Oklahoma Ordnance Works Authority v. District Court of Wagoner County,* 1980 OK 100, 613 P.2d 746, 749 for the proposition that venue in a case against a public official was in the county where the decision to perform or accomplish such acts emanated which was the county of official residence.

¶4 Garrett responded that he was not filing a petition and that venue was not relevant. He also pointed out to the court that the many unpublished district court opinions attached to the Motion by the Board of Regents had no legal value. The Uniform Enforcement of Foreign Judgment Act stated he could file his judgment in any county, and he had followed the procedures set forth. He objected to the Motion for Transfer.

¶5 The Motion to Vacate the Foreign Judgment was transferred to Payne County. We find that the result was correct.

¶6 Registering a foreign judgment in some cases may bring a judgment debtor into court for litigation purposes. "A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state and may be enforced or satisfied in like manner." 12 O.S.2001 § 721. Consequently, venue becomes an important legal right that is not embedded in the Act itself. In *Ex Parte Wells,* 567 So.2d 388 (Ala.Civ. App.1990), the Court of Civil Appeals of Alabama held that venue for filing a foreign default judgment under the Foreign Judgments Act was proper in the judgment debtor's county of residence, pursuant to the general venue statute. In that case, the judgment debtor argued that otherwise, allowing the judgment creditor to file the foreign judgment in any county granted it a "super status" for venue purposes and could cause a resident, who may not have been afforded procedural due process in the sister state, the possible expense and inconvenience of challenging the action hundreds of miles from home.

¶7 Similarly, in *Cherwood, Inc. v. Marlin Leasing Corporation,* 268 Ga.App. 64, 601 S.E.2d 356 (2004), a party obtained a default judgment against a corporation in a foreign jurisdiction and, pursuant to the Uniform Enforcement of Foreign Judgments Act, filed it "in the office of the clerk of any court of competent jurisdiction of this state." The

---

1. 12 O.S.2001 § 721: A copy of any foreign judgment authenticated in accordance with the applicable Act of Congress or of the statutes of this state may be filed in the office of the court clerk of any county of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the district court of any county of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state and may be enforced or satisfied in like manner. Provided, however, that no such filed foreign judgment shall be a lien on real estate of the judgment debtor until a certified copy of the judgment so filed is also filed in the office of the

county clerk in the county where the real estate is located.

The amendment to § 721, effective November 1, 2004, requires the foreign judgment creditor to comply with *12 O.S.2001 § 706* (B) which describes the creation of a judgment lien on real estate.

2. *12 O.S.2001 § 133* provides: Actions for the following causes must be brought in the county where the cause, or some part thereof arose:

* * *

Second. An action against a public officer for an act done by him in virtue, or under color, of his office, or for neglect of his official duties.

Georgia court noted that the Uniform Act does not provide any specific venue and determined then that the Georgia general venue statutes applied. It rejected the judgment creditor's argument that the court was simply a repository for the foreign judgment on the ground that a challenge, for instance, to personal jurisdiction, could give rise to an adversary proceeding. It concluded that the Uniform Act had to comply with the general venue requirements of the Georgia Constitution. Further, "[t]o rule otherwise would allow forum shopping by the unscrupulous plaintiff, not to mention presenting defendants who wish to challenge a filing under the Uniform Act with geographical inconveniences not faced by similarly situated defendants." *Id.* at 357. It then noted that other state courts, when faced with the Uniform Act which did not contain a specific venue section, also used their general venue laws.

¶8 Two of the three causes of action alleged by Garrett against Panhandle State sounded in tort—negligence and tortious interference with business and contractual relationships. The Board of Regents, the governing body of Panhandle State, is a constitutional entity. Okla. Const. Art. 6, § 31a. Further, it is a constitutional state agency for the purposes of the Governmental Tort Claims Act. 51 O.S.2001 § 151 et seq. Section 163 of the Governmental Tort Claims Act states:

> A. Venue for actions against the state within the scope of the act shall be either the county in which the cause of action arose or Oklahoma County, except that a constitutional state agency, board or commission may, upon resolution filed with the Secretary of State, designate another situs for venue in lieu of Oklahoma County.

¶9 In the case at bar, the Board of Regents has passed a resolution, codified at OAC 30:1, naming Payne County as its situs for venue and naming its service agents. That document was in the record, as well as its published resolution.

¶10 We hold that the general venue statutes apply to Oklahoma's Uniform Enforcement of Judgments Act, unless, as is found in the case at hand, a particular venue statute is applicable. The Motion to Vacate was properly transferred to Payne County, the situs for venue of the Board of Regents.

## IN PERSONAM JURISDICTION

■ ¶11 The Board of Regents filed a Motion to Vacate the Texas judgment based foremost on the ground that the Texas court failed to obtain personal jurisdiction over the Board of Regents. The record reveals that Garrett served Panhandle State attempting service of process according to Texas law, by serving its Secretary of State who then mailed a copy of the process to the nonresident (interim president), by certified mail, return receipt requested.[3] The Board of Regents for Oklahoma Agricultural and Mechanical Colleges is a "body corporate," 70 O.S.2001 § 3411 (a), which has appointed agents for service of process. There is no proper service agent for Panhandle State, which is not a legal entity. Consequently, the Board of Regents posit, Texas did not obtain personal jurisdiction over the correct party. Further, this is shown on the face of the judgment roll and without need of resorting to extrinsic evidence. The rule is that "[t]he regularity and validity of a foreign judgment, including issues concerning the foreign court's jurisdiction, should be tested by the law of the jurisdiction where the judgment was rendered." Pettit v. *American National Bank of Austin*, 1982 OK 85, ¶3, 649 P.2d 525, 527. However, "Oklahoma is not required to give full faith and credit to foreign judgments where such judgments are rendered without jurisdiction over the parties." *First Republicbank Mineral Wells v. General Forging Die, Inc.*, 1990 OK CIV APP 98, ¶5, 801 P.2d 134, 135. In the case at bar, the Board of Regents did not offer any extrinsic evidence of failure to obtain personal jurisdiction (it also alleged failure to

---

3. 17.045 of the Tex.Civ.Prac. & Rem.Code:
   (b) If the secretary of state is served with process under Section 17.044(a)(3), he shall immediately mail a copy of the process to the nonresident (if an individual), to the person in charge of the

nonresident's business, or to a corporate officer (if the nonresident is a corporation)....
(d) The process or notice must be sent by registered mail or by certified mail, return receipt requested.

**52**

obtain personal jurisdiction because of insufficient minimum contacts with the State of Texas), rather, it relied on the judgment roll.[4]

■ ¶ 12 Garrett maintained that the judgment roll supported proper service pursuant to Texas law and that the judgment was not vulnerable to collateral attack. Garrett argued that absent defect obvious on the face of the judgment itself, the only court in which a party could challenge personal jurisdiction, was the court in which it was rendered. He stated that the mechanism for this procedure was something like a special appearance and challenge to jurisdiction. Garrett cited *A.L.T. Corporation v. Small Business Administration,* 801 F.2d 1451, 1456, (5th Cir.1986) for Texas' "absolute verity" rule: "Regardless of whether these alleged defects of service of process would have sustained a direct attack on the judgment, Texas courts refuse to entertain collateral attacks based on service defects if the judgment recites that the defendant was fully served. [citations omitted] '[I]t is the settled rule of this state that where a judgment is collaterally attacked, plain jurisdiction recitals contained therein must be accorded absolute .verity.'" citing *Pure Oil Co. v. Reece,* 124 Tex. 476, 78 S.W.2d 932, 934 (1935). The Texas judgment recites that the "... Defendant, although having been duly served and legally cited to appear and answer, failed to appear and answer so as to place the merits of the Plaintiff's claims in issue, and wholly made default." Nonetheless, Texas law is not construed as rigidly as Garrett argues.

■ ¶ 13 In *American Steel Building Company, Inc. v. Davidson & Richardson Construction Company,* 847 F.2d 1519 (11th Cir.1988), Fred Davidson and Michael Richardson entered a contract to buy specially manufactured steel buildings from American Steel Building Company. The contract had a clause naming Texas as the legal forum state. American Steel alleged Davidson refused delivery and filed suit against both men and their partnership in Harris County, Texas. Pursuant to the Texas long-arm statute, American Steel served the Texas Secretary of State who then mailed a copy of the complaint and summons by certified mail to "Zed" Davidson, in care of his company in Hinesville, Georgia. The Secretary of State received a receipt signed by someone named Thomas Burriss (whom counsel indicated was Davidson's son-in-law). Davidson did not appear or answer and default judgment was entered against him in Texas. American Steel then filed a suit to enforce its judgment in the U.S. District Court for the Southern District of Georgia. Fred Davidson filed an affidavit stating he had never been known as "Zed." American Steel moved for summary judgment which the district court granted finding that Texas had properly obtained jurisdiction over Davidson and that the Texas judgment was entitled to full faith and credit. On appeal, the *American Steel* court noted the rule enunciated by *A.L.T.,* that is, that Texas courts do not allow collateral attacks on default judgments based on jurisdictional defects, however, that rule does not apply when the second court's inquiry discloses that jurisdictional questions were not fully and fairly litigated; if they were not finally decided in the court that rendered the decision, then it is not entitled to full faith and credit. "In the present case, Davidson never appeared in the Texas court, never litigated the jurisdictional issues, and judgment was by default. This court has held that where the defendant does not appear, and judgment is by default, the state court judgment does not preclude the federal court from reviewing the jurisdictional issues." *Id.* at 1521. The Board of Regents was not served, did not appear, answer, or litigate in any manner the question of jurisdiction. The Oklahoma Court properly questioned the legality of personal jurisdiction pursuant to Texas law.

¶ 14 In the case at hand, although there was a recitation on the judgment roll that service was proper, the collateral attack with respect to personal jurisdiction because the

4. The Board of Regents also asserted several grounds pursuant to Oklahoma law why the judgment should be vacated such as the Governmental Tort Claim Act, 51 O.S.2001 § 151 et seq.; the Oklahoma statute of limitations and the fact that the judgment included punitive damages, which the Board claimed violated public policy; and lack of minimum contacts. We do not address these grounds.

Board of Regents was not served must be allowed, pursuant to Texas law. Panhandle State University cannot be a proper party defendant under Oklahoma law. The Board of Regents, or one of its named legal agents, had to have been served with process. There is no evidence in the judgment roll that the Board of Regents was properly served under either Texas or Oklahoma law. Texas did not obtain personal jurisdiction over the Board of Regents.

¶ 15 The Motion to Transfer on the ground of improper venue is AFFIRMED. The Order Granting the Motion to Vacate the Foreign Judgment is AFFIRMED.

ADAMS, J., and MITCHELL, P.J., concur.